Eric Wanger v. Securities Exchange Commission Mr. Sobloom Good morning, Your Honor. My name is Thomas Sobloom, and I represent the petitioner, Mr. Wanger. If it pleases the Court, we stand here before you today because of a number of issues that have arisen in these proceedings. The procedures that were used or failed to be followed, the failure to address the merits and the equities of intervening events since the settlement order, what the public interest requires, what's fair, and the restoration of Mr. Wanger's liberty interest. And I get there and raise those issues because of the settlement that Mr. Wanger entered into in July 2012. To bring to an end a lengthening cost of litigation, he agreed to settle, without admitting or denying, in exchange for the right to reapply in one year. After watching his businesses and his clients depart over the next few years, Mr. Wanger sought to exercise his right that he had bargained for. He sought readmission in the securities industry. That right to reapply, however, has been an empty one. Can you give me examples of other instances in which the Commission, having given someone a right to reapply and warning them that, quote, this application, however, does not guarantee reentry, period, close quote, has granted the unlimited right to reenter the business that Mr. Wanger saw, instead of incrementally showing somebody who's willing to sponsor you and then expanding and then eventually opening it up without qualifications? I think you hit on the magic word, that's sponsorship. But other people frequently get sponsorship. The Commission cites many such instances in its brief, and one can find more in the records. That may be true. That may be true. There have been other cases. Especially for somebody with a rather minor problem to begin with, with lots of people willing to vouch for his integrity. But here's the problem. As soon as that order was entered, FINRA posted on its broker check website, permanently barred. But they all do that. I mean, why is this different? I can't understand why Mr. Wanger is different from all the other people who get orders like this, who find a way incrementally to get themselves back into the business. The attempts he made at brokerage houses, at investment advisory firms, at other places, said to him, you're too much of a regulatory risk. But other people find somebody. Why couldn't he? He was unable. He made his best efforts to all the entities that he could talk to, 20, 30, whatever the numbers were. They said, we can't. You're a regulatory risk. You have a regulatory bullseye on your back. You're a business risk. We can't have the SEC come in here and examine us. How those other people did it, I can't. So maybe he was asking the wrong people who didn't want the SEC taking a look at their books. I don't know how far the man must go, Your Honor. If he has looked around Chicago where he lives and attempted many places and they've all said no, does he have to go to California? Does he have to move to Oregon? How far do you have to go before you say you have created, the government has created a set of conditions I cannot meet. You've put something up there called permanently barred and foreclosed me from any opportunities. But the issue has to be, if that was the agreement, if the deal struck was that there would be a right to reenter after one year. It's not what it says. What it says is the right to reapply. And it says this application does not guarantee reentry. If it had said you have a right to reenter after a year, this would be a completely different case. He would have long since have reentered. Let's add a couple extra facts to that. The staff, at the time they signed this consent settlement, and in order to get the settlement, said to his then lawyer, his right to reapply is going to virtually be granted. And the staff said just stay out of the business for a year, put your businesses under a trust of a Chicago law firm, and your reentry will be virtually guaranteed. So do you have some theory of estoppel by staff? Well, the SEC has raised that issue in the Heckler case, and the court left open whether or not there ever could be estoppel for government misconduct. But the Heckler case also said that people like Mr. Wenger have the right to some minimum decorum of decency, honor, and reliability when dealing with the government. The government cannot cut a deal and all of a sudden say that's not what our deal is. Our document said we do not promise reentry. But the staff also says we are virtually guaranteed to come back in. You are correct, Your Honor, that that document says what it says. Yeah. But people are entitled to rely on what the government proposes and how they propose it. Are they, or should you rely on the written order? The problem is, and having done this for 30 years, this is boilerplate. It will not be changed. It cannot be changed. It never will be changed. You either sign it or you don't. You don't have a choice. Well, why didn't he choose not to settle then? He didn't have to settle. Because when he was working through the administrative process, the steps that he took to try to get a fair hearing before the administrative law judge didn't occur. He was denied subpoenas. He was told by witnesses that he had asked to come to testify, that they had been contacted by the SEC staff. They weren't going to come in. The ALJ denied out of hand his motion to dismiss without written opinion. Every step that he took. And you could take a petition for review from an order. These are reviewable orders. If there's a breakdown of the process before an agency, this court sits to hear those sorts of cases as do the other courts of appeals. Except for the statutory scheme requires you to go up through the process, first to the commission and then to this court. Right, right. He sought to have interlocutory appeal. He sought to have certification. Both times the commission turned it down and said no. But what I'm just saying, if there was a breakdown in the process and he exhausted all the commission-level remedies, courts exist to address exactly those kinds of problems. Back to the order again. The order said you waive all your rights to appeal. You have to come back in through the process. If you agree with that order, but I'm saying counterfactually, if he had chosen not to settle and to go through the processes before the SEC and was unhappy with the outcome, then he could have received review in a court. Two points. He did attempt review. It was denied. That was an interlocutory review. You're changing the subject. I'm not trying to. You are. My point is this. At some point, a litigant has to say, this is so costly and I can't keep going through this when the process is working against me, that he decides to take a deal with the government in which the government lawyers tell him your reentry will be virtually guaranteed. You are correct, Your Honor. That document says what it says. You waive all rights to appeal and there's no guarantee of readmission. It says the application will be subject to the applicable law. This, I suppose, gets us into that Rule 193 business, but the Commission says that the way it handles reentry is this incremental approach, and he never did present an application to reenter that followed the Commission's normal pattern of supervised activity. He was unable to. He couldn't meet the conditions with FINRA, saying he's permanently barred, and the SEC issued a risk alert in September 2016. If anybody tries to employ or bring in a person with discipline or bar, they will be on a high-priority list for examination and they themselves will be subject to enforcement. But there's no reason to think that if you go to the Commission and you say this is the arrangement we're proposing, why would it look at that skeptically? That's what they want you to do. I'm glad you raised that. I sat down with the Chief Counsel of the Division of Enforcement, my former agency, and said to the man, here's where we are. We're seven years into this process. Here's what he would like to do. He would like to set up his own shop or he would like to go to work with a private equity firm. He said no. It's in the public interest that this man remain barred for life. The conversation occurred. It was flat-out denied. We were left with no other option other than to file this application, try to go through the process, and get to this court. That was the whole reason we're here. We could not get relief. On a gentleman's agreement, on conversation with enforcement, or with the Commission. Speaking of why you're here, could you talk about timeliness for a minute? Because it looks to me like you're a day late. Or actually a weekend late. I'm glad to talk about it. The rule says that all Commission's orders shall be signed. Rule 140, paragraph A. This was an unsigned order. No, no, it wasn't. There was a signed order, electronically signed, which is very common in today's world. And the order posted on the website was an unsigned version. But the next day, June the 11th, I believe, the order is transmitted to him. Let's take a piece at a time. Jill Peterson acknowledged in her declaration she posted an unsigned order. She posted the unsigned, but she electronically signed it. This is in the appendix. But the signed order I got was received on a Friday, four days later, was on dated July 12th, with a backdated day of July 11th. What about this stuff the Commission has? So here we have, this is page SA-5, which shows, it's a screenshot, individual orders, order respondents, his name, type of order, other, approval signature, Peterson, Jill, 7-10-2017, and so on. It's signed. What reason is there to think that's not? I would have no idea of an internal process. All I can go by as a lawyer having practiced for 35 years is a document that appears to be signed and to count the time from the signed order. There's no evidence that it's not signed on the 10th. The document that is signed on July 12th by Jill Peterson, handwritten signature, is different than what was posted on the website. The one posted on the website is unsigned, typewritten name, Brent Fields. The signed order is a delayed July 12th, signed by Jill Peterson in her hand. That's the signed order. And here's the administrative filing, July 10, order denying application for consent to associate. To go your way, you have to have quite the elaborate conspiracy theory, I think. Not at all. I'm not proposing that at all. The rule says a signed order. When did I get a signed order? I got a signed order dated July 12th by Jill Peterson. I'm not talking about a conspiracy here. I'm talking about a process that Mr. Wenger has tried to follow through, and because of the conditions set up, it's been impossible for him to meet it. Okay. I'd also point out that as far as the administrative lodges that you're talking about, that matter is now before the United States Supreme Court. The Department of Justice has admitted. Well, that's a whole different thing. On July 14th, the order was received, right, by Mr. Wenger? It got in my office on July 14th. Was that signed? The certificate of service was unsigned. The order was signed. The order was signed. The order was signed by Jill Peterson. Yeah. So the order that was received on July 14th was a signed order. That's different than what was posted on the website on the 10th, which was unsigned, and the type was named Brent Fields. If you look, if you compare the two documents. Yeah, but let's just start the clock at July 14th then. I'm more than time. Yeah, you had 56 days. I've got more than time. If you start on the date that the cover letter says July 12th, I've still got a couple more extra days. Even take the most cautious date of July 11th where they backdated the letter. That lands on Saturday. I'm still timely. So I went by the signed document. All right. If you want to save a little time for rebuttal. I do. You can do that. All right. Mr. Matro. Thank you, Your Honor. May it please the court, Daniel Matro for the Securities and Exchange Commission. This case should be. I'd like a little water, Mr. Matro. I'm sure somebody could bring you some. This case should be decided on the threshold issue of timeliness. Mr. Wanger did not file his petition for review within 60 days after the entry of the commission order as both the Exchange Act and the Advisors Act require. The commission's rules of practice, in particular Rule 140C, provide that the date of entry of the order is the date it is signed as reflected in its caption. Here, Wanger filed his petition 63 days after the date found in the order's caption. So it's untimely. So of the things you put at the end of your brief, are you relying on this screenshot on page SA-5, or what are you relying on to show what the caption shows? I mean, in the first place, we're relying on the fact that the caption, the order's caption, is dated July 10th. And under the caption date rule along established rule, it says to figure out when the appellate clock starts. There's a clear-cut rule. You look to the caption date. That tells you when the order was signed and, therefore, when it was entered. When you say caption, what do you mean by caption? There's this, at the top of the order, the caption at the top of the order says. I know what a caption is. I've been around for some time. But, I mean, does it have a specific meaning in your? When you look at the average commission order, there's the case name at the top and the release numbers, and then there's a date. And that's what's referred to as the caption date. And that's an easy way to figure out that it was intended. So we're looking here in the blue brief at BA-1, which says order denying application for consent to associate. And it says the upper left-hand corner, Securities Exchange Act of 1934, release number 81111-July 10, 2017, and the Investment Advisors Act-July 10, 2017. So that's what you're talking about. That tells you when the order was signed and, therefore, entered under the commission's rules. So what is the date of the signature on BA-1? It says July 10, right? It says July. July 10. That date there. July 10. That's how you know in the appellate class. The commission says that's the date that governs under the rule that passed. Under this long-standing rule, that's the date that governs. And, as the Ninth Circuit explained in Newell, it was intended to eliminate uncertainty, and it does that with this clear caption. Well, that's because normally court orders don't have the date in the caption. Yeah. Our orders. No, that's right. But there was additional. There's some confusion there because when you say caption, we think of the order of a court. Typically, that date is not in the caption. Yeah. With commission orders, it is there. It is there. And that provides a clear-cut rule where you can always go to to find when the appellate clock starts. And, at the same time, the commission's rules ensure adequate notice and time to prepare the petition for review. They require prompt service. That's Rule 141B. Well, that was the point of Rule 140, right, to clarify exactly when the clock starts running. Exactly. There was uncertainty in the Court of Appeals, and the caption date rule was intended to eliminate it. And to get around that straightforward conclusion that he was three days late, Mr. Wanger speculates that the order was not actually signed on the caption date, but the evidence refutes that argument. First of all, just the caption date itself is evidence that the commission complied with its own rules here. There's no evidence it didn't. So that, in and of itself, is a piece of evidence. We also have the Assistant Secretary's declaration that she signed the order on July 10th. And we have the internal records that the commission submitted that corroborate that testimony, the screenshot of the Office of Secretary's internal document management system. So you're saying Mr. Sjoblom's mistake was by making it too hard, instead of looking at the letter date or anything else.  Yeah, I think he looks everywhere but where the rules and the case law tell you to look, which is the caption date. Because typically, and I understand what the rule is, but typically a BA-12 would be where the date would be in a court order, not the commission, but the court order. Yeah. Well, I can tell you that's where it is. That's where it's found. I understand you've got it set up differently. The commission orders appear with the date at the top, and this court has made clear that these types of statutory deadlines are mandatory and binding, and failure to comply necessitates dismissal. Isn't the 60 days embodied in the statute? It is. And so I'm not that I think it makes a lot of difference here because the commission's relying on it, but under Bowles against Russell, I thought that statutory dates for filing appeals were of jurisdictional quality, not just mandatory and binding. And rule-based dates, such as the one we have in the criminal rules, are mandatory rules to be sure, but they are waivable. They're not jurisdictional. You're saying that anyway, so this is probably not the case to worry about it. Yeah, exactly. We haven't briefed the issue. We recognize that the Supreme Court's views on these questions have shifted in recent years, and to the extent there's any doubt as to the jurisdictional nature of these provisions, and we think there are arguments for why they are jurisdictional under Bowles, as you say, but this isn't the case where that has to be decided because they're mandatory and binding, and it's clear that they weren't complied with. With respect to the merits, I just want to respond to a few of the points that my opposing counsel made. He suggests that he's been put into a catch-22, but I would just resist that premise. The fact is, as you pointed out, Your Honor, a number of barred individuals have found sponsoring employers and managed to obtain consent. The order cites at least four cases from recent years, and there are an additional three applications that were granted in the last year, and most or all of these cases involve Scienter-based fraud, allegations of Scienter-based fraud, so it's not as if those were significantly easier cases in which to gain the Commission's consent. Does the Commission keep public statistics of any sort on how many such applications are received each year and how many are granted, how many denied, even anonymously, let's say? I'm not aware of official statistics. I can cite obviously the four cases in the order, the three cases in the last year. There are several cases in addition, and that's also not including when a barred individual seeks to associate with a registered broker-dealer, they've got to go directly to FINRA, so there's a set of cases that go to FINRA, so we're not talking about the entire universe of cases here. What about the FINRA Scarlet A that was imposed upon Mr. Wanger when FINRA said he's subject to a permanent bar? I think the label on the FINRA broker check website was entirely accurate. The fact is Mr. Wanger consented to a bar, a bar that was indefinite. He didn't have a right to reenter the industry unfettered after one year. His right was a limited right to apply for reentry under the Commission's rules, and those rules limit reentry to reentry in a limited capacity with a particular employer under specific terms and conditions that are intended to safeguard the public interest, and there was no inaccuracy in FINRA's representation of his sanction, and to the extent that he challenged that order, or he is challenging FINRA's representation, he had a chance to bring a case saying that it was dismissed and he didn't appeal it in time. So I think it's important to remember that the Commission's reentry process serves an important function. The Commission has an obligation to protect the public interest. These are individuals who are going to be in positions of trust and confidence working with clients and managing client funds, and so it makes sense that the Commission would require a set of safeguards to be in place, an adequate plan of supervision before it allows reentry, and here all the Commission had before it was an application that sought unfettered reentry with no conditions, no supervision. The Commission has never granted an application anywhere close to that, and so it simply saw the application before it and denied it, and Mr. Wanger is free to submit another application that complies with the Commission's rules, but he has no right to reenter on unfettered terms simply because it was difficult for him to meet those terms. Those terms and rules are there to protect the public. So do you have any comment on Mr. Shobham's remarks about representations made by the staff of the Commission at the time he entered into the settlement agreement? I mean, I think one thing you say in your brief is that the settlement agreement itself isn't really even before us here. Exactly. I mean, the first thing I would say is there is simply no evidence in the record that such assurances were made. The only evidence in the record is Mr. Wanger's own hearsay assertions about conversations that allegedly occurred between an unidentified member of the staff and an unidentified member of his legal team, but the important point is that what he signed and the consent order that was issued, the plain language of those documents contradict any notion that he was assured of reentry. Those documents make clear, as you said, Your Honor, that reentry is not guaranteed, that it has to unfold according to the Commission's rules, and the Commission has discretion when considering those applications, and that there's just nothing in the rules or precedent could have assured him, had Mr. Wanger or his counsel looked, that he could apply, seek unfettered reentry, and be permitted that reentry. Mr. Wanger also mentioned a 2016 risk alert that the Commission issued. I'd just point out that that risk alert was issued after his application was filed, so it couldn't have affected his application, but in any event, it's hardly surprising or not foreseeable that the Commission would focus its limited resources based on risk, and the Commission and FINRA have said in the past that they would put particular scrutiny on and focus on entities that hire individuals who have been barred. That makes sense as an allocation of scarce resources, and it was hardly not foreseeable at the time he was deciding whether to enter this consent agreement. If there are no further questions, Your Honor, we would rest on the arguments in our briefs. I see none, so thank you very much. Thank you. Mr. Sjoblom, you have a couple minutes, a minute and 39 seconds. So let me just point out on this timeliness thing. Unfortunately, the SEC has it upside down. The caption date rule is a former rule. It was changed. It was changed to the current rule. The caption date rule that he's referring to and decided in the Newell case is no longer the rule. The Commission abandoned it and went to the signed order rule, so the caption rule is not applicable to this petition. Secondly, with respect to digital signatures, as we pointed out in our reply brief, the Commission proposed a rule to have a digital-type signature, an S-slash signature, whatever, for Commission orders. It was never passed. It was never got approval. So we're at the signing rule. The caption date rule has been long gone. The staff's comments, he said there is no record. I point in our appendix to A-170. The Commission doesn't agree with you. I mean, as you know, that Rule 140 doesn't exist anymore. Rule 140 does not exist. I'm not following you. You said the caption date rule is a non-entity, and the Commission's entire brief relies on it. That's fine. They can point to 140. It's their rule. You can point to 140-B all day long and talk about a caption. But if you look at 140-A and 140-C, it says all Commission orders shall be signed. And 140-C says date of entry is date of signing. The caption date rule that's in B about making it publicly available, fine. If you want to make orders publicly available, go ahead. But as far as date of entry, 140-C says signed. And 140-A says all orders have to be signed. The Newell case is under the prior rule and the caption date rule. It's not what we're talking about here. As far as this 193 versus 203-F, the point of supplying an alternative method under 203-F was for the Commission to allow to make a decision to let him have some type of business opportunity, start again, start over. Whatever terms and conditions the Commission wanted to impose would have been fine. We couldn't meet 193, so give us the option under 203-F. Under the FINRA matter. Okay, and you can wrap up with this as you're over time. Yes. The FINRA matter, the FINRA could have easily put on their right to reapply. Mr. Wang and his counsel asked them to change it. They refused. The only time it got changed, if you can believe this, the New York Times took an interest in this case, called up FINRA and said, why do you have permanent bar? Why doesn't it say right to reapply? They changed it in response to a journalist. Okay. Then, as soon as the order was denied, they went back to bar. If you look at it now, it says barred. All right. It doesn't have the accurate language of the order. Thank you very much. Thanks to both counsel. We'll take the case under advisement.